UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

WINFRED TUTTLE #374487,

          Plaintiff,          Case No. 2:08-cv-113

v.                                    Honorable Robert Holmes Bell

JOHN BOYNTON, et al.,

          Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. On June 5, 2008, this Court ordered service of Plaintiff's complaint on Defendants John Boynton, Duncan MacLaren, and Unknown Mansfield. On October 22, 2008, Defendants filed a motion for summary judgment (docket #10) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (docket #14) and affidavit (docket #15) on or about November 28, 2008. Upon review, I recommend that Defendants' motion for summary judgment be denied.

## Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for

determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable

2

jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**Facts**

Plaintiff is presently incarcerated at the Standish Maximum Correctional Facility. In his *pro se* complaint, he sues Defendants John Boynton, Duncan MacLaren, and Unknown Mansfield.[1] Plaintiff claims that in August of 2006, while he was incarcerated at the Chippewa Correctional Facility (URF), he received threats from other prisoners, who were part of a Muslim group. Plaintiff did not know the prisoners' names, but gave staff their cell numbers. Prison officials filled out a request for protective segregation form and placed Plaintiff in temporary segregation.

Plaintiff states that he wrote several kites to Defendants Boynton and MacLaren, including one dated September 3, 2006, in which he stated that his life was in danger, that a problem had started at URF in July of 2004, that he had been badly beaten in November of 2004, and that the problem still existed. Plaintiff claims that on September 6, 2006, Plaintiff was seen by Security Classification Committee (SCC) members, who included Defendants Boynton and MacLaren. Plaintiff informed them that his life was endangered by other inmates who were going to stab him and / or jump on him, and that he had previously been attacked while at URF in 2004. Defendants Boynton and MacLaren told Plaintiff that they needed the names of the prisoners who had threatened

---

[1] Plaintiff also named three John Doe Defendants, but because Plaintiff was unable to identify these individuals, they could not be served.

him. Plaintiff again stated that he did not know the names, but could tell Defendants Boynton and MacLaren where the prisoners' cells were located. Defendants Boynton and MacLaren told Plaintiff that without the prisoners' names, they could not give him protection. On September 7, 2006, Defendant Boynton responded to Plaintiff's kite stating that the SCC had determined that Plaintiff could be safely housed in general population at URF. In addition, in an institutional form dated August 30, 2006, Defendant Mansfield stated that investigation did not support Plaintiff's claim that he needed to be transferred to another facility. Plaintiff was subsequently placed back in the general population at URF. Seven days later, on September 9, 2006, Plaintiff was stabbed in the face by another prisoner with a homemade knife, which penetrated Plaintiff's cheek area and required stitches. A notice of intent was issued and Plaintiff was subsequently approved for temporary segregation until he could be transferred to another facility.

Plaintiff claims that Defendants were deliberately indifferent to his need for protection. Plaintiff seeks compensatory and punitive damages.

## Discussion

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.

I.     Applicable Law

Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741;

*Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

    II.    MDOC Policy

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[2], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the

---

[2]The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

### III. Grievances

In support of their motion for summary judgment, Defendants attach a copy of tje affidavit of James Armstrong, who has been employed as the Manager of the Grievance and Appeals Section of the MDOC since May 11, 2003. Mr. Armstrong attests that when a step III grievance is received in the Grievance Section, it is date-stamped by clerical staff. According to Mr. Armstrong, the technician then audits the grievance to ensure completion and enters the information, including the grievance code as assigned by the local grievance coordinator, into the grievance tracking database. Mr. Armstrong further attests that each step III grievance appeal is recorded in the

Grievance Tracking database. (Defendants' Exhibit, ¶¶ 1, 10-14.) Defendants also attach a copy of the grievance inquiry for Plaintiff, showing that he filed six grievances to step III, dated 11/24/2003, 12/2/2003, 12/2/2003, 12/16/2003, and 5/30/2008. (Defendants' Exhibit A.) None of the dates of these grievances coincide with the dates at issue in Plaintiff's complaint.

In Plaintiff's response to the motion for summary judgment, he claims that he filed a step I grievance on September 10, 2006, regarding the alleged failure to protect by Defendants. Plaintiff states that he subsequently became subject to harassment by other officers, who were calling him "snitch," and told him that they did not like prisoners who wrote up staff members. Plaintiff states that for the next two months, he did not receive any sort of receipt for his grievance. Plaintiff attempted to send letters to the URF grievance coordinator requesting information on his grievance, to no avail. On November 10, 2006, Plaintiff filed a second step I grievance, but before Plaintiff received a step I response, he was transferred to the Saginaw Correctional Facility (SRF). Therefore, Plaintiff did not receive his step I grievance response until December 16, 2006, although the response was dated November 21, 2006. On the same day that Plaintiff received the step I response, he mailed the URF Grievance Coordinator a letter requesting a step II appeal form and explaining that he had just received the response. Plaintiff did not receive a reply, so after two weeks, he sent another request for an appeal form. On January 17, 2007, Plaintiff received a response from the URF Grievance Coordinator, denying Plaintiff's request for a step II appeal form on the basis that Plaintiff violated the five-day time limit. Plaintiff then sent a letter to the URF Grievance Coordinator stating that even if his appeal was untimely, he was still entitled to an appeal form so that he could exhaust his remedies. However, the URF Grievance Coordinator never sent Plaintiff the appeal form. Therefore, Plaintiff claims that he was deprived of the ability to file a step II or III appeal. Plaintiff attaches to his response copies of step I grievances he allegedly filed, copies of the letters requesting

appeal forms, and his affidavit, which support his assertion that he attempted to exhaust his administrative remedies. As noted above, Plaintiff is required to exhaust his "available" administrative remedies. *See Porter*, 534 U.S. at 532; *Booth*, 532 U.S. at 733. In the opinion of the undersigned, it appears that Plaintiff exhausted the remedies available to him. Therefore, Defendants are not entitled to summary judgment pursuant to 42 U.S.C. § 1997e(a).

### Recommended Disposition

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (docket #10) be denied.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: May 28, 2009

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).