UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WINFRED TUTTLE,

        Plaintiff,

v.

JOHN BOYNTON, et al.,

        Defendants.
_____/

Case No. 2:08-cv-113

HON. ROBERT HOLMES BELL

### REPORT AND RECOMMENDATION

        Plaintiff Winfred Tuttle, an inmate currently confined at the Ionia Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections. Specifically, Defendants include Assistant Deputy Warden (ADW) John Boynton, ADW Duncan MacLaren, and ADW Donald Mansfield, all of whom are employed at Chippewa Correctional Facility (URF).

        Plaintiff's complaint alleges that Defendants violated the Eighth and Fourteenth Amendments and state tort law by failing to provide Plaintiff with protection when he reported to prison staff in August of 2006 that he had received threats from a Muslim group. Plaintiff did not know the names of the prisoners, but gave prison staff the numbers of their cells. Prison officials filled out a request for protective segregation form and placed Plaintiff in temporary segregation. Plaintiff states that he wrote several kites to Defendants Boynton and MacLaren, including one dated September 3, 2006, in which he stated that his life was in danger, that the problem had started at URF in July of 2004, that he had been badly beaten in November of 2004, and that the problem still existed.

Plaintiff claims that on September 6, 2006, he was seen by Security Classification Committee (SCC) members, who included Defendants Boynton and MacLaren. Plaintiff informed them that his life was endangered by other inmates who were going to stab him and/or jump on him, and that he had previously been attacked while at URF in 2004. The SCC members told Plaintiff that they needed the names of the prisoners who had threatened him. Plaintiff again stated that he did not know the names but could tell the SCC members where the prisoners' cells were located. Plaintiff was told that without the prisoners' names, they could not give him protection. Plaintiff was placed in protective segregation pending an investigation. In an institutional form dated August 30, 2006, Defendant Mansfield stated that the investigation did not support Plaintiff's claim that he was in danger in the general population. Plaintiff was subsequently placed back in the general population at URF.

On September 8, 2006, Plaintiff was stabbed in the face by another prisoner with a homemade knife, which penetrated Plaintiff's cheek area and required stitches. Plaintiff stated at the time of the incident that he believed that the assailant was someone who was hired by his former cell mate, who attempted to force Plaintiff to perform sexual favors. After the September 8, 2006, incident, Plaintiff was placed in temporary segregation and transferred to another facility.

Defendant MacLaren asserts that he was unaware of Plaintiff's August 30, 2006, request for protection. Defendant MacLaren states that he does not have any records or documentation to suggest that he conducted or was a part of any SCC meetings involving Plaintiff from August 1, 2006 until September 15, 2006. On September 15, 2006, after Plaintiff had been injured, Defendant MacLaren did sit on the SCC committee that reviewed and approved Plaintiff's

request for protection. Defendant MacLaren is seeking dismissal from this lawsuit for lack of personal involvement.

Plaintiff claims that Defendants' actions violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution, as well as his rights under state law. Plaintiff is seeking compensatory and punitive damages in an unspecified amount.

Defendants have moved for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other

evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue). Plaintiff did not respond to Defendants' Motion for Summary Judgment and thus did not provide any affidavits, depositions, answers to interrogatories, or admissions on file showing a genuine issue of material fact for trial.

Plaintiff has named Defendant MacLaren, but does not provide any evidence to support that Defendant MacLaren was a part of the Security Classification Committee that denied Plaintiff's request for protection on August 30, 2006. Nor does Plaintiff provide any evidence that Defendant MacLaren ever received any kites regarding Plaintiff's fear of attack. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing

that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory laibility claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990). In the opinion of the undersigned, Plaintiff has failed to show that Defendant MacLaren was personally involved in the alleged underlying conduct.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, plaintiff must show that a defendant was deliberately indifferent to the plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-881 (6th Cir. 1988). While a

prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection: between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

Plaintiff in this case alleges that Defendants should be held liable because they were aware of Plaintiff's concern that he would be attacked by another inmate or inmates, yet they denied him protection despite this awareness. Prison guards may be held liable under § 1983 if they fail to protect an inmate from a serious assault about which they had actual and specific reason to believe might occur. *See McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). However, Plaintiff has not shown that Defendants had actual knowledge that Plaintiff would be attacked and they disregarded that knowledge. Plaintiff did not provide Defendants with enough information to constitute actual knowledge of an attack.

On August 30, 2006, Plaintiff sent correspondence to prison staff, claiming that "a lot of Latinos are going to do something to injure me." Plaintiff was interviewed regarding this claim by the Security Classification Committee on or about September 6, 2006 . Plaintiff did not give investigators the names of the individuals that he feared would harm him, but he did give their cell numbers. Plaintiff's documented request to prison staff regarding his request for protection claims "Latinos" as the group that allegedly wanted to harm Plaintiff, but in his complaint, Plaintiff claims that he sought protection from a group of Muslims that were making threats against him. Once Plaintiff requested protection, he was placed in segregation according to MDOC policy until prison staff completed their investigation into Plaintiff's allegations. The findings indicated that

Plaintiff's fear of attack could not be substantiated and Plaintiff was released back into the general population on September 5, 2006.

Defendants assert that the fact that Plaintiff was attacked by an unknown assailant on September 8, 2006 was coincidence and unforeseeable based upon information given by Plaintiff to prison staff. Plaintiff's institutional history indicates that Plaintiff has in the past lied by claiming that he has been harmed or thinks he will be harmed, solely for his personal benefit. Also, Plaintiff could only provide Defendants with the race and cell numbers of the individuals that he feared would attack him. When Plaintiff was attacked by an unknown individual on September 8, 2006, he stated that he thought that his former roommate had hired this individual to assault him because of pressure for sexual favors. This information was not given to prison staff during Plaintiff's August 2006 request for protection.

Defendants conducted an investigation into Plaintiff's fear of attack, interviewed potential witnesses, and determined that Plaintiff's fears of an attack by "Latinos" or according to the complaint, "Muslims" were unsubstantiated and that Plaintiff should return to general population. Therefore, Defendants had no actual and specific reason to believe Plaintiff faced a risk of harm. The actions by Defendants may have been negligent but they were not deliberately indifferent. Defendants held hearings and investigated Plaintiff's concerns. Thereafter, Defendants concluded that Plaintiff should be returned to general population. There is a lack of support for Plaintiff's claim that Defendants were deliberately indifferent. Accordingly, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's Eighth Amendment claims.

Plaintiff also appears to claim a violation of substantive due process under the Fourteenth Amendment. However, the Eighth Amendment is the primary source of protection

against the wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Where such an explicit textual source of constitutional protection exists, that source, not the more generalized notion of substantive due process, is the guide for analyzing the claim. *Albright v. Oliver*, 510 U.S. 266 (1994); *Graham v. Connor*, 490 U.S. 386 (1989). Plaintiff's claim must therefore be for redress under the Eighth Amendment, not the Fourteenth Amendment. *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990). Plaintiff's Eighth Amendment claims have been analyzed above.

Additionally, in order to state a viable substantive due process claim premised upon the arbitrary use of governmental power, plaintiff must show at a minimum that intentional governmental conduct "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." *See e.g. United States v. Salerno*, 481 U.S. 739, 746 (1987); *Nobles v. Brown*, 985 F.2d 235, 236-237 (6th Cir. 1992). In the Sixth Circuit, these standards require that plaintiff establish that he has been deprived of a fundamental right and that the defendants were more than simply negligent. *See generally, Nobles, supra*; *Newell v. Brown*, 981 F.2d 990 (6th Cir. 1992), *cert. denied* 510 U.S. 842 (1993); *Sutton v. Cleveland Board of Education*, 958 F.2d 1339, 1350-1351 (6th Cir. 1992); *Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990)(Hillman, sitting by special designation); *see also Nishiyama v. Dickson County*, 814 F.2d 277, 282 (6th Cir. 1987). Plaintiff must show that defendants' conduct was egregious, shocking to the conscience, or otherwise transcending all bounds of reasonable behavior. *Williams v. Smith*, 717 F. Supp. 523 (W.D. Mich. 1989) (Hillman, C.J.).

In the absence of conduct which shocks the conscience or which infringes some other substantive constitutional right, such claims are consistently dismissed by the courts. *See Smith v. Massachusetts Department of Corrections*, 936 F.2d 1390, 1402 (1st Cir. 1991) (malicious

prosecution claim under Section 1983 requires satisfaction of either substantive or procedural due process elements, including either showing of egregious or conscience-shocking misconduct or lack of an adequate state remedy); *Sprouse v. Babcock*, 870 F.2d 540 (8th Cir. 1989) (claims based upon falsity of misconduct charges standing alone do not state a claim under Section 1983, unless linked to some other substantive constitutional right); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988) (false misconduct report does not by itself state claim, unless filed in retaliation for cooperation in investigation of staff corruption). *See also Cale v. Johnson*, 861 F.2d 943 (6th Cir. 1988) (retaliation claim in which prisoner alleged evidence against him in disciplinary proceedings was falsified required showing of conduct which represents an "egregious abuse of governmental power" or otherwise "shocks the conscience" *and* that plaintiff risked a loss of liberty). In the absence of these elements, the courts consider state tort law an adequate remedy for simple malicious prosecution claims. *See e.g. Franco, supra*, at 588 (Section 1983 cannot be made a vehicle for transforming mere civil tort injuries into constitutional injuries). Therefore, the undersigned concludes that if Plaintiff intended to state a claim based upon substantive due process, that claim is without merit.

Furthermore, Plaintiff's complaint establishes that if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision

violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). As noted above, Plaintiff's complaints were investigated by prison officials and he was kept in protective segregation during the investigation. Plaintiff was only released to the general population after the investigation failed to support Plaintiff's claims that he was in danger of being assaulted. Accordingly, Plaintiff was not denied procedural due process in this case.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court

can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

To the extent that Plaintiff is claiming his state law rights were violated, it is recommended that this court refuse to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727 (1966); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir. 1992), *cert. denied*, 504 U.S. 915 (1922).

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motion for Summary Judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket # 23) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from

proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: July 1, 2010